JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
BRADLEY R. O'BRIEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
601 D. Street, NW
Washington, DC 20004
Tel.: (202) 514-2750
Fax: (202) 514-0097
DC Bar No.: 964734
Email: Benjamin.fisherow@usdoj.gov
　　　　Brad.obrien@usdoj.gov

Attorneys for Plaintiff United States of America

FILED
SEP 24 PM 12:55
DISTRICT COURT

E-Filing

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. CV 09 4503 EMC |
| v. | |
| PACIFIC GAS and ELECTRIC COMPANY | **COMPLAINT** |
| Defendant. | |

　　　　The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the United

COMPLAINT

States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against Pacific Gas and Electric Company ("PG&E") pursuant to Sections 113(b)(2) and 167 of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7413(b)(2) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. § 7470-92.

2. As set forth more fully herein, PG&E constructed the Gateway Generating Station ("GGS"), a natural gas-fired power plant in Antioch, California, without first obtaining an appropriate PSD permit authorizing this construction and without installing appropriate technology to control emissions of nitrogen oxides and carbon monoxide, as required by the Act and the Act's implementing regulations.

3. As a result of the Defendant's operation of the GGS following this unlawful construction, in the absence of appropriate controls, excess amounts of nitrogen oxides and carbon monoxide have been and are still being released into the atmosphere.

## JURISDICTION

4. This Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

## VENUE

5. Venue is proper in this District pursuant to Section 113 of the Act, 42 U.S.C. § 7413, and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the Defendant either

resides, has its principal place of business, or committed violations in this District, and because the facility that is the subject of this Complaint is located within in this District.

### INTRADISTRICT ASSIGNMENT

6. Intradistrict assignment is proper in the San Francisco Division pursuant to Civil L.R. 3-2 because the events and omissions giving rise to this Complaint occurred in Contra Costa County. Civil L.R. 3-2(d) provides that, except as provided in Civil L.R. 3-2(c), all civil actions which arise in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo, or Sonoma shall be assigned to the San Francisco Division or the Oakland Division.

### NOTICES

7. EPA issued the Defendant a Notice of Violation on August 13, 2009 pursuant to Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1). Commencement of this civil action is authorized by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

### DEFENDANT

8. Defendant PG&E is a California corporation, with its principal place of business in California, that owns and operates the GGS.

9. Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

### STATUTORY AND REGULATORY BACKGROUND

10. The Clean Air Act is designed to protect and enhance the quality of the Nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

11. Section 108(a) of the Act, 42 U.S.C. § 7408(a), requires the Administrator of EPA to identify and prepare air quality criteria for each air pollutant which may endanger public health and welfare when emitted, and which results from numerous or diverse mobile or stationary sources. For each such "criteria" pollutant, Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator to promulgate National Ambient Air Quality Standards ("NAAQS") requisite to protect public health and welfare. Pursuant to Sections 108 and 109, EPA has identified and promulgated NAAQS for $NO_2$ (nitrogen dioxide), ozone, and carbon monoxide as such pollutants. 40 C.F.R. §§ 50.8 - 50.11.

12. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area. An area that does not meet the NAAQS is termed a "nonattainment" area. An area that cannot be classified due to insufficient data is termed "unclassifiable."

13. At times relevant to this Complaint, GGS was located in Antioch, California which is classified as in attainment for nitrogen dioxide and carbon monoxide. The same area was classified as non-attainment for ozone.

14. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS standards. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources,

-4- COMPLAINT

and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to herein collectively as the "PSD program."

15. Sections 110(a)(2)(C) and 161 of the Act, 42 U.S.C. §§ 7410(a)(2)(C) and 7471, require each state to adopt a state implementation plan ("SIP") that contains emissions limitations and such other measures as may be necessary to prevent significant deterioration of air quality in areas that have been designated as either in attainment with NAAQS or unclassifiable.

16. In 1978, EPA promulgated the Federal PSD regulations set forth at 40 C.F.R. § 52.21 and incorporated these regulations into all SIPs nationwide. See 40 Fed. Reg. 26403 (1978). If it so chooses, a state may promulgate its own PSD regulations, which must be at least as stringent as those set forth at 40 C.F.R. § 52.166. If EPA finds the state PSD regulations to be adequate, it may approve those regulations into the SIP as a replacement for 40 C.F.R. § 52.21. In lieu of promulgating its own PSD regulations, a state may request delegation of the Federal PSD regulations pursuant to 40 C.F.R. § 52.21(u). Such a delegation allows the state to implement 40 C.F.R. § 52.21 on behalf of EPA.

17. On or about April 23, 1986, EPA delegated the administration of the Federal PSD program as set forth in the SIP to the Bay Area Air Quality Management District ("BAAQMD").

18. As set forth at 40 C.F.R. § 52.21(a)(2)(iii), before any "major stationary source" may be constructed in an attainment or unclassifiable area, a PSD permit must first be

obtained.

19. Under the applicable SIP and PSD program, a "major stationary source" is defined to include fossil-fuel-fired steam electric plants of more than 250 million British thermal units (Btu) per hour heat input which emit or have the potential to emit one hundred tons per year or more of any regulated air pollutant. 40 C.F.R. § 52.21(b)(1)(i)(a).

20. Under the applicable SIP, and as set forth at 42 U.S.C. § 7475(a)(4), a newly constructed major stationary source must, *inter alia*, install and operate the best available control technology ("BACT"), as defined in 42 U.S.C. § 7479(3).

## CLEAN AIR ACT ENFORCEMENT PROVISIONS

21. Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), provides that:

> Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit, the Administrator shall notify the person and the State in which the plan applies of such finding. At any time after the expiration of 30 days following the date on which the notice of violation is issued, the Administrator may . . .
>
> \*    \*    \*
>
> (C) bring a civil action in accordance with subsection (b) of this section.

22. Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), provides that:

> "except for a requirement or prohibition enforceable under the preceding provisions of this subsection, whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of this subchapter . . . including, but not limited to, a requirement or prohibition of any rule, plan, order, waiver, or permit promulgated, issued or approved under those provisions or titles . . . the Administrator may . . . bring a civil action in accordance with subsection (b) of this section . . . ."

23. Section 113(b)(1) of the Act, 42 U.S.C. § 7413(b)(1), and 40 C.F.R. § 52.23 authorize the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day of violation for violations occurring before January 30, 1997; up to $27,500 per day for each such violation occurring between January 30, 1997 and March 15, 2004; up to $32,500 per day for each such violation occurring between March 15, 2004 and January 9, 2009; and up to $37,500 per day for each such violation occurring after January 9, 2009 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan.

24. Section 113(b)(2) of the Act, 42 U.S.C. § 7413(b)(2), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day of violation for violations occurring before January 30, 1997, up to $27,500 per day for each such violation occurring between January 30, 1997 and March 15, 2004; up to $32,500 per day for each such violation occurring between March 15, 2004 and January 9, 2009; and up to $37,500 per day for each such violation occurring after January 9, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, requirements of the Act other than those specified in Section 113(b)(1), 42 U.S.C. § 7413(b)(1), including violations of Section 165(a), 42 U.S.C. § 7475(a), and Section 111, 42 U.S.C. § 7411.

25. Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary, to prevent the construction, modification or operation of a major emitting facility which does not conform to PSD requirements.

## GENERAL ALLEGATIONS

26. On July 24, 2001, BAAQMD issued an Authority to Construct and PSD permit authorizing the construction of the GGS in Antioch, California. This authorization was granted to Mirant Delta, LLC ("Mirant").

27. In or around February 2002, Mirant ceased construction of the GGS and this cessation of construction lasted more than 18 months.

28. On March 3, 2003, EPA withdrew from BAAQMD the delegation of authority to administer the PSD program within the jurisdictional boundaries of the BAAQMD, which includes the location of the GGS.

29. After March 3, 2003, and for the remainder of the 18 month period after Mirant ceased construction of the GGS, EPA was the only entity authorized to administer and issue permits under the PSD Program to construct facilities within the jurisdictional boundaries of the BAAQMD, which includes the location of the GGS. The federal regulations set forth at 40 C.F.R. § 52.21 supplied the applicable legal requirements governing permits for such construction.

30. In July 2003, during the time Mirant had ceased construction of the GGS, Mirant requested that BAAQMD grant an extension of Mirant's PSD permit. BAAQMD purported to grant this extension.

31. At the time BAAQMD purported to grant Mirant's extension request,

BAAQMD's authority to administer the PSD program had been rescinded.

32. At the time of Mirant's extension request, EPA was the sole permitting authority for the PSD program within the jurisdictional boundaries of the BAAQMD, and federal regulations governed the administration of PSD permits.

33. Pursuant to 40 C.F.R. § 52.21(r)(2): "Approval to construct shall become invalid if construction is not commenced within 18 months after receipt of such approval, if construction is discontinued for a period of 18 months or more, or if construction is not completed within a reasonable time."

34. BAAQMD lacked the authority to extend Mirant's PSD permit in 2003 because BAAQMD's authority to administer the PSD program had been rescinded.

35. Pursuant to 40 C.F.R. § 52.21(r)(2), Mirant's PSD permit for the GGS expired in or about August 2003 because more than 18 months had elapsed since construction of the GGS had ceased.

36. BAAQMD purported to transfer Mirant's Authority to Construct and PSD permit to PG&E in early 2007. At the time of the purported transfer, the PSD permit had expired and was legally ineffective.

## CLAIM FOR RELIEF

37. Paragraphs 1 through 36 are hereby incorporated by reference.

38. PG&E constructed the GGS, which is a major emitting facility, without first obtaining an appropriate PSD permit in violation of Section 165(a)(1)of the Act, 42 U.S.C. § 7475(a)(1), and 40 C.F.R § 52.21.

39. PG&E is operating the GGS without an appropriate permit that applies

BACT in violation of Section 165(a)(1) of the Act, 42 U.S.C. § 7475(a)(1).

    40.    Pursuant to Section 7413(b) of the Act, 42 U.S.C. § 7413(b), PG&E is liable for injunctive relief and appropriate civil penalties for each day of its continued operation of the GGS in violation of the Act.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in this Complaint, the United States of America requests that this Court:

    1.    Permanently enjoin Defendant PG&E from operating the Gateway Generating Station except in accordance with the Clean Air Act and any applicable regulatory requirements.

    2.    Order Defendant PG&E to remedy its past violations by, *inter alia*, requiring PG&E to apply for all necessary permits in conformity with the requirements of the PSD provisions of the Act.

    3.    Order Defendant PG&E to remedy its past violations by, *inter alia*, requiring Defendant to install, as appropriate, the best available control technology at the GGS for each pollutant subject to regulation under the Act, and to take such other measures as are necessary to bring the Gateway Generating Station into compliance with the PSD provisions of the Act.

    4.    Assess an appropriate civil penalty against Defendant PG&E.

    5.    Award Plaintiff its costs in this action.

6. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*[signature]*

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*[signature]*

W. BENJAMIN FISHEROW
Deputy Chief
BRADLEY R. O'BRIEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
601 D Street, NW
Washington, DC 20004

OF COUNSEL:

ALLAN ZABEL
Senior Assistant Region Counsel
United States Environmental Protection Agency
Region 9
San Francisco, California

-11-     COMPLAINT