1  JOHN C. CRUDEN
   Acting Assistant Attorney General
2  Environment and Natural Resources Division
   United States Department of Justice
3  Washington, D.C. 20530

4  W. BENJAMIN FISHEROW
   Deputy Chief,
5  Environmental Enforcement Section
   BRADLEY R. O'BRIEN
6  Senior Attorney
   Environmental Enforcement Section
7  Environment and Natural Resources Division
   United States Department of Justice
8  601 D Street, N.W.
   Washington, DC 20004
9  Telephone: 202-514-2750
   Fax:202-514-0097
10 DC Bar No.: 964734
   Email: Benjamin.fisherow@usdoj.gov
11        Brad.obrien@usdoj.gov

12

13 Attorneys for Plaintiff United States of America

14               UNITED STATES DISTRICT COURT
15               NORTHERN DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,          )
                                       )   CV 09    4503
17 Plaintiff,                          )
                                       )   Civil Action No. _____
18        v.                           )
                                       )   **CONSENT DECREE**
19 PACIFIC GAS AND                     )
   ELECTRIC COMPANY                    )
20                                     )
   Defendant.                          )
21 _____       )

22

23

24

25

26

27

28
                                          CONSENT DECREE

1

## TABLE OF CONTENTS

2   I. JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3   II. APPLICABILITY AND BINDING EFFECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4   III. CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5   IV. INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6   V. ENVIRONMENTAL MITIGATION PROJECTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7   VI. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8   VII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9   VIII. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10  IX. FORM OF NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11  X. PUBLIC NOTICE REQUIREMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12  XI. RESOLUTION OF PAST CIVIL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

13  XII. EFFECTIVE DATE AND TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14  XIII. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15  XIV. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

16  XV. COSTS OF SUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17  XVI. PAYMENT OF ENFORCEMENT EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18  XVII. SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19  XVIII. FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

20

21

22

23

24

25

26

27

28

CONSENT DECREE

1    WHEREAS, Plaintiff United States of America, on behalf of the United States

2    Environmental Protection Agency ("EPA"), is concurrently filing a complaint ("Complaint")

3    initiating this action against Pacific Gas and Electric Company ("PG&E");

4    WHEREAS, the United States alleges that PG&E has constructed and commenced

5    operation of its 530 megawatt combined cycle, natural gas-fired combustion turbine power plant

6    located near Antioch, California, known as the Gateway Generating Station ("GGS"), in

7    violation of the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act

8    ("Act"), 42 U.S.C. § 7475, and the regulations promulgated thereunder as set forth at 40 C.F.R.

9    52.21;

10    WHEREAS PG&E's predecessor-in-interest, Mirant Delta, LLC ("Mirant"), commenced

11    construction of GGS in late 2001 pursuant to an Authority to Construct ("ATC") issued by the

12    Bay Area Air Quality Management District ("BAAQMD") on July 24, 2001, which ATC also

13    constituted a PSD permit;

14    WHEREAS Mirant formally suspended construction of the facility in February, 2002;

15    WHEREAS on March 3, 2003, after making revisions to its federal PSD regulations,

16    EPA withdrew the delegation of PSD authority from BAAQMD;

17    Whereas BAAQMD believed EPA's withdrawal of delegation of PSD authority did not

18    affect its authority to extend existing PSD permits;

19    WHEREAS at the request of Mirant, BAAQMD extended the ATC twice, in 2003 and

20    2005, and believed, at those times, it was also extending the PSD permit;

21    WHEREAS PG&E acquired the unfinished GGS construction project from Mirant in

22    November, 2006, and resumed construction of the project on February 5, 2007;

23    WHEREAS in January, 2007, BAAQMD transferred the ATC to PG&E and believed it

24    was also transferring the still-effective PSD permit;

25    WHEREAS EPA alleges that BAAQMD was without authority to extend the PSD permit

26    after March 3, 2003, and that the PSD permit expired by operation of law 18 months after Mirant

27    ceased construction in February, 2002;

28    WHEREAS, PG&E denies the material allegations of the Complaint;

- 3 -                                    CONSENT DECREE

1　　　WHEREAS, this Consent Decree does not constitute an admission by PG&E of any facts
2　or of any liability;

3　　　WHEREAS, the United States and PG&E (the "Parties") agree that settlement of the civil
4　claims as alleged in the Complaint is in the public interest and that entry of this Consent Decree
5　without further litigation is the most appropriate way to resolve this action;

6　　　THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

7　　　　　　　　　　**I. JURISDICTION AND VENUE**

8　　　1. This Court has jurisdiction over the subject matter of this action and over the Parties
9　pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, 1355,
10　and 1367. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1395, and 42
11　U.S.C. § 7413(b). PG&E consents to and shall not challenge entry of this Consent Decree or this
12　Court's jurisdiction to enter, enforce, modify, or terminate this Consent Decree.

13　　　　　　　　　**II. APPLICABILITY AND BINDING EFFECT**

14　　　2. Each signatory to this Consent Decree certifies that he or she is fully authorized to
15　enter into the terms and conditions of this Consent Decree and to execute and legally bind the
16　party for whom the signatory has signed.

17　　　3. The provisions of this Consent Decree shall apply to and be binding upon the United
18　States and PG&E, its subsidiaries and divisions, and its successors and assigns. Any change in
19　ownership or corporate status of PG&E, including, but not limited to, any transfer of assets or
20　real or personal property, shall in no way alter PG&E's responsibilities under this Consent
21　Decree.

22　　　　　　　　　　　**III. CIVIL PENALTY**

23　　　4. Within thirty (30) days after the entry of this Consent Decree, PG&E shall pay a civil
24　penalty to the United States of twenty thousand dollars ($20,000.00). Payment shall be made by
25　Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with
26　the current electronic funds transfer procedures, referencing DOJ Case Number 90-5-2-1-09753
27　and the civil action case name and case number. Payment shall be in accordance with written
28　instructions which will be provided to PG&E by the Financial Litigation Unit of the United

　　　　　　　　　　CONSENT DECREE

States Attorney's Office for the Northern District of California following entry of this Consent Decree. PG&E shall provide notice of payment, referencing DOJ Case Number 90-5-2-1-09753 and the civil action case name and case number to EPA and the Department of Justice at the addresses set forth in Section IX (Form of Notice).

5. Upon entry of this Consent Decree, the United States shall be deemed a judgment creditor for purposes of collection of the penalties required by this Consent Decree and enforcement of this Consent Decree. In any collection proceeding, the validity, amount, and appropriateness of the civil penalty specified in this Consent Decree shall not be subject to review.

## IV. INJUNCTIVE RELIEF

6. PG&E shall, within thirty (30) days after entry of this Consent Decree, submit to the California Energy Commission ("CEC") a Petition to Amend Conditions of Certification in the matter of Gateway Generating Station (00-AFC-1) requesting an Order to Amend the Energy Commission Decision in the matter of Gateway Generating Station (00-AFC-1). The amendments sought by PG&E shall: 1) immediately lower GGS' current limit for oxides of nitrogen ("NOx") emissions from the combined cycle units from 2.5 parts per million volume ("ppmv") to 2.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any one-hour period; 2) immediately lower GGS' current limit for carbon monoxide ("CO") emissions from the combined cycle units from 6.0 ppmv to 4.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any rolling three-hour period; and 3) lower GGS' rolling 12-month NOx emissions cap for the combined cycle units from 174.3 tons per year ("tpy") to 139.2 tpy beginning on June 1, 2010.

7. PG&E shall, within thirty (30) days after entry of this Consent Decree, submit an application to the Bay Area Air Quality Management District ("BAAQMD") requesting inclusion in the permit to operate and in the Title V Operating Permit for GGS of permit conditions which: 1) immediately lower the current limit for NOx emissions from the combined cycle units from 2.5 ppmv to 2.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any one-hour period; 2) immediately lower the current limit for CO emissions from the combined cycle units

- 5 -                                    CONSENT DECREE

from 6.0 ppmv to 4.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any rolling three-hour period; and 3) lower the rolling 12-month NOx emissions cap for the combined cycle units from 174.3 tpy to 139.2 tpy beginning June 1, 2010.

8. Beginning November 1, 2009, and notwithstanding any permitting action by the CEC and/or BAAQMD, NOx emissions from the combined cycle units at GGS shall not exceed 2.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any one-hour period, and CO emissions from the combined cycle units at GGS shall not exceed 4.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any rolling three-hour period.

9. NOx emissions during Natural-Gas Combustion Turbine Start-up Mode shall not be included in calculating compliance with the one-hour emission limit of 2.0 ppmv set forth in Paragraphs 6, 7, and 8. CO emissions during Natural-Gas Combustion Turbine Start-up Mode shall not be included in calculating compliance with the three-hour emission limit of 4.0 ppmv set forth in Paragraphs 6, 7, and 8. Natural-Gas Combustion Turbine Start-up Mode is the lesser of the first 256 minutes of continuous fuel flow to the natural gas-fired combustion turbine after fuel flow is initiated or the period of time from natural gas-fired combustion turbine fuel flow initiation until the natural gas-fired combustion turbine achieves two consecutive continuous emission monitor data points in compliance with the emission concentration limits set forth in Paragraphs 6, 7, and 8.

10. NOx emissions during Natural-Gas Combustion Turbine Shutdown Mode shall not be included in calculating compliance with the one-hour emission limit of 2.0 ppmv set forth in Paragraphs 6, 7, and 8. CO emissions during Natural-Gas Combustion Turbine Shutdown Mode shall not be included in calculating compliance with the three-hour emission limit of 4.0 ppmv set forth in Paragraphs 6, 7, and 8. Natural-Gas Combustion Turbine Shutdown Mode is the lesser of the 30 minute period immediately prior to the termination of fuel flow to the natural gas-fired combustion turbine or the period of time from noncompliance with the emission concentration limits set forth in Paragraphs 6, 7, and 8 until termination of fuel flow to the natural gas-fired combustion turbine.

11. Beginning no later than June 1, 2010, and notwithstanding any permitting action by

- 6 -                    CONSENT DECREE

1 the CEC and/or BAAQMD, the rolling 12-month NOx emissions from the combined cycle units
2 at GGS shall not exceed 139.2 tpy.

3    12.  Beginning November 1, 2009, PG&E shall provide EPA, as provided in Section IX
4 (Form of Notice), detailed excess emission reports for NOx and CO emissions as described at 40
5 C.F.R. § 60.7(c). These reports shall be submitted within 30 days after the end of each calendar
6 quarter and shall cover that preceding calendar quarter. The first report shall cover the partial
7 calendar quarter from November 1, 2009, through December 31, 2009.

8                    **V. ENVIRONMENTAL MITIGATION PROJECTS**

9    13.  By January 1, 2010, PG&E shall submit applications to the CEC and/or BAAQMD,
10 as necessary, for the installation of the General Electric OPFLEX Turndown and OPFLEX
11 Startup NOx products as described in Paragraphs 14 and 15, below.

12    14.  By January 1, 2011, PG&E shall install and make fully operational at GGS'
13 combined cycle units the General Electric OPFLEX Turndown product. EPA is requiring use of
14 this product in order to allow the combined cycle units to run at low capacity, thereby avoiding
15 shut downs, startups, and the higher NOx emissions associated with startups.

16    15.  By January 1, 2011, PG&E shall install and make fully operational at GGS'
17 combined cycle units the General Electric OPFLEX Startup product. EPA is requiring use of this
18 product in order to reduce the higher NOx emissions associated with startups.

19                         **VI.  STIPULATED PENALTIES**

20    16.  PG&E shall pay the following stipulated penalties for failure to comply with this
21 Consent Decree:

22         (a)  Failure to submit any of the applications as required pursuant to Paragraphs 6,
23 7, or 13 above: $500 per day for each failure to apply.

24         (b)  Failure to submit any of the reports as required pursuant to Paragraph 12
25 above: $500 per day for each failure to submit.

26         (c)  Failure to pay the civil penalty required pursuant to Paragraph 4 above: $500
27 per day.

28         (d)  Failure to implement either of the projects required pursuant to Section V

                              - 7 -                    CONSENT DECREE

1  (Environmental Mitigation Projects) above: $500 per day for each failure to implement.

2  (e) Failure to comply with the one-hour NOx emissions limitation of 2.0 ppmv in
3  Paragraph 8: where the emission level constituting a violation is less than or equal to 3.0 ppmv,
4  $500 per violation; where the emission level constituting a violation is greater than 3.0 ppmv and
5  GGS has exceeded the 2.0 ppmv limit on 15 or fewer days in the existing calendar year, $2,000
6  per violation; where the emission level constituting a violation is less than or equal to 3.0 ppmv
7  and GGS has exceeded the 2.0 ppmv limit on more than 15 days in the existing calendar year,
8  $5,000 per violation; and where the emission level constituting a violation is greater than 3.0
9  ppmv and GGS has exceeded the 2.0 ppmv limit on more than 15 days in the existing calendar
10  year, $10,000 per violation.

11  (f) Failure to comply with the three-hour CO emissions limitation of 4.0 ppmv in
12  Paragraph 8: where the emission level constituting a violation is less than or equal to 6.0 ppmv,
13  $500 per violation; where the emission level constituting a violation is greater than 6.0 ppmv and
14  GGS has exceeded the 4.0 ppmv limit on 15 or fewer days in the existing calendar year, $2,000
15  per violation; where the emission level constituting a violation is less than or equal to 6.0 ppmv
16  and GGS has exceeded the 4.0 ppmv limit on more than 15 days in the existing calendar year,
17  $5,000 per violation; and where the emission level constituting a violation is greater than 6.0
18  ppmv and GGS has exceeded the 4.0 ppmv limit on more than 15 days in the existing calendar
19  year, $10,000 per violation.

20  (g) Failure to comply with the rolling 12-month NOx emissions limitation in
21  Paragraph 11: $20,000 per ton in excess of the applicable limit.

22  17. PG&E shall notify EPA in writing of any failure to meet Consent Decree
23  requirements for which stipulated penalties may be due as soon as it has knowledge of such
24  failure.

25  18. All stipulated penalties shall begin to accrue on the day after the complete
26  performance is due or the day that a violation occurs, and shall continue to accrue through the
27  final day of the completion of the activity or the correction of the noncompliance. Nothing
28  herein shall preclude the simultaneous accrual of separate stipulated penalties for separate

- 8 -                                    CONSENT DECREE

1  violations of this Consent Decree. Penalties shall accrue regardless of whether EPA has notified

2  PG&E of a violation.

3  19. Stipulated penalties owed to the United States shall be paid by certified or cashier's

4  check, payable to the "U.S. Department of Justice," and referencing this Consent Decree by

5  caption, civil action number, and DOJ Ref.# 90-5-2-1-09753. PG&E must deliver any such

6  payments by certified mail with return receipt requested to:

7  United States Attorney
   Northern District of California
8  Attention: Financial Litigation Unit
   450 Golden Gate Ave, 10th Floor
9  San Francisco, California 94102

10  20. Concurrently with making any payment for stipulated penalties, PG&E must send

11  notice of payment to EPA and DOJ directed to the addresses provided in Section IX (Form of

12  Notice). The notice of payment shall also identify: (a) the specific provision of Section VI

13  (Stipulated Penalties) related to such payment, and (b) a description of the violation(s) of this

14  Consent Decree for which the stipulated penalties or interest are being tendered.

15  21. Any stipulated penalty accruing pursuant to this Consent Decree shall be payable

16  upon demand and due not later than thirty (30) days from EPA's written demand. The United

17  States may, in its unreviewable discretion, waive payment of any portion of stipulated penalties

18  that may accrue under this Consent Decree.

19  22. If PG&E fails to pay stipulated penalties owed pursuant to this Consent Decree

20  within thirty (30) days of receipt of a written demand, it shall pay interest on the late payment for

21  each day of late payment after the initial thirty-day time period. The rate of interest shall be the

22  most recent interest rate determined pursuant to 28 U.S.C. § 1961.

23  ### VII. FORCE MAJEURE

24  23. For purposes of this Consent Decree, a "Force Majeure Event" shall mean an event

25  that has been or will be caused by circumstances beyond the control of PG&E, its contractors, or

26  any entity controlled by PG&E that delays compliance with any provision of this Consent Decree

27  or otherwise causes a violation of any provision of this Consent Decree despite PG&E's best

28  efforts to fulfill the obligation. "Best efforts to fulfill the obligation" include using the best

efforts to anticipate any potential Force Majeure Event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay and any adverse environmental effect of the violation is minimized to the greatest extent possible.

24. <u>Notice of Force Majeure Events</u>. If any event occurs or has occurred that may delay compliance with or otherwise cause a violation of any obligation under this Consent Decree, as to which PG&E intends to assert a claim of Force Majeure, PG&E shall notify the United States in writing as soon as practicable, but in no event later than twenty-one (21) calendar days following the date PG&E first knew, or by the exercise of due diligence should have known, that the event caused or may cause such delay or violation. In this notice, PG&E shall reference this Paragraph of this Consent Decree and describe the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or violation, all measures taken or to be taken by PG&E to prevent or minimize the delay and any adverse environmental effect of the violation, the schedule by which PG&E proposes to implement those measures, and PG&E's rationale for attributing a delay or violation to a Force Majeure Event. PG&E shall adopt all reasonable measures to avoid or minimize such delays or violations. PG&E shall be deemed to know of any circumstance which PG&E, its contractors, or any entity controlled by PG&E knew or should have known.

25. <u>Failure to Give Notice</u>. If PG&E fails to comply with the notice requirements of this Section, the United States may void PG&E's claim for Force Majeure as to the specific event for which PG&E has failed to comply with such notice requirement.

26. <u>United States's Response</u>. The United States shall notify PG&E in writing regarding PG&E's claim of Force Majeure within twenty (20) business days of receipt of the notice provided under Paragraph 24. If the United States agrees that a delay in performance has been or will be caused by a Force Majeure Event, the United States and PG&E shall stipulate to an extension of deadline(s) for performance of the affected compliance requirement(s) by a period equal to the delay actually caused by the event. In such circumstances, an appropriate modification shall be made pursuant to Section XIII (Modification) of this Consent Decree.

27. <u>Disagreement</u>. If the United States does not accept PG&E's claim of Force Majeure,

1    or if the United States and PG&E cannot agree on the length of the delay actually caused by the

2    Force Majeure Event, the matter shall be resolved in accordance with Section VIII (Dispute

3    Resolution) of this Consent Decree.

4        28. Burden of Proof. In any dispute regarding Force Majeure, PG&E shall bear the

5    burden of proving that any delay in performance or any other violation of any requirement of this

6    Consent Decree was caused by or will be caused by a Force Majeure Event. PG&E shall also

7    bear the burden of proving that PG&E gave the notice required by this Section and the burden of

8    proving the anticipated duration and extent of any delay(s) attributable to a Force Majeure Event.

9    An extension of one compliance date based on a particular event may, but will not necessarily,

10   result in an extension of a subsequent compliance date.

11       29. Events Excluded. Unanticipated or increased costs or expenses associated with the

12   performance of PG&E's obligations under this Consent Decree shall not constitute a Force

13   Majeure Event.

14       30. Potential Force Majeure Events. The Parties agree that, depending upon the

15   circumstances related to an event and PG&E's response to such circumstances, the kinds of

16   events listed below are among those that could qualify as Force Majeure Events within the

17   meaning of this Section: construction, labor, or equipment delays; malfunction of a combined

18   cycle unit or emission control device; unanticipated natural gas supply or pollution control

19   reagent delivery interruptions; acts of God; acts of war or terrorism; and orders by a government

20   official, government agency, other regulatory authority, or a regional transmission organization,

21   acting under and authorized by applicable law, that directs PG&E to supply electricity in

22   response to a system-wide (state-wide or regional) emergency. Depending upon the

23   circumstances and PG&E's response to such circumstances, failure of a permitting authority to

24   issue a necessary permit in a timely fashion may constitute a Force Majeure Event where the

25   failure of the permitting authority to act is beyond the control of PG&E and PG&E has taken all

26   steps available to it to obtain the necessary permit, including, but not limited to: submitting a

27   complete permit application; responding to requests for additional information by the permitting

28   authority in a timely fashion; and accepting lawful permit terms and conditions after

- 11 -                    CONSENT DECREE

1  expeditiously exhausting any legal rights to appeal terms and conditions imposed by the
2  permitting authority.

3      31. As part of the resolution of any matter submitted to this Court under Section VIII
4  (Dispute Resolution) regarding a claim of Force Majeure, the United States and PG&E by
5  agreement, or this Court by order, may in appropriate circumstances extend or modify the
6  schedule for completion of work under this Consent Decree to account for the delay in the work
7  that occurred as a result of any delay agreed to by the United States or approved by the Court.
8  PG&E shall be liable for stipulated penalties for its failure thereafter to complete the work in
9  accordance with the extended or modified schedule (provided that PG&E shall not be precluded
10  from making a further claim of Force Majeure with regard to meeting any such extended or
11  modified schedule).

12                          **VIII. DISPUTE RESOLUTION**

13      32. The dispute resolution procedure provided by this Section shall be available to
14  resolve all disputes arising under this Consent Decree, provided that the Party invoking such
15  procedure has first made a good faith attempt to resolve the matter with the other Party.

16      33. The dispute resolution procedure required herein shall be invoked by one Party
17  giving written notice to the other Party advising of a dispute pursuant to this Section. The notice
18  shall describe the nature of the dispute and shall state the noticing Party's position with regard to
19  such dispute.

20      34. The Party receiving such a notice shall acknowledge receipt of the notice, and the
21  Parties shall expeditiously schedule a meeting to discuss the dispute informally not later than
22  fourteen (14) days following receipt of such notice.

23      35. Disputes submitted to dispute resolution under this Section shall, in the first instance,
24  be the subject of informal negotiations between the Parties. Such period of informal negotiations
25  shall not extend beyond thirty (30) calendar days from the date of the first meeting between the
26  Parties' representatives unless they agree in writing to shorten or extend this period.

27      36. If the Parties are unable to reach agreement during the informal negotiation period,
28  the United States shall provide PG&E with a written summary of its position regarding the

- 12 -                                          CONSENT DECREE

1    dispute. The written position provided by the United States shall be considered binding, unless,

2    within forty-five (45) calendar days thereafter, PG&E seeks judicial resolution of the dispute by

3    filing a petition with this Court. If PG&E seeks judicial resolution, the United States's written

4    summary shall be deemed its initial filing with this Court regarding the dispute. The United

5    States may submit a response to the petition within forty-five (45) calendar days of filing.

6        37. The time periods set out in this Section may be shortened or lengthened upon motion

7    to the Court of one of the Parties to the dispute, explaining the Party's basis for seeking such a

8    scheduling modification.

9        38. This Court shall not draw any inferences nor establish any presumptions adverse to

10   either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

11       39. As part of the resolution of any dispute under this Section, in appropriate

12   circumstances the Parties may agree, or this Court may order, an extension or modification of the

13   schedule for the completion of the activities required under this Consent Decree to account for

14   the delay that occurred as a result of dispute resolution. PG&E shall be liable for stipulated

15   penalties for its failure thereafter to complete the work in accordance with the extended or

16   modified schedule, provided that PG&E shall not be precluded from asserting that a Force

17   Majeure Event has caused or may cause a delay in complying with the extended or modified

18   schedule.

19       40. The Court shall decide all disputes pursuant to applicable principles of law for

20   resolving such disputes. In their filings with the Court under Paragraph 36, the Parties shall state

21   their respective positions as to the applicable standard of law for resolving the particular dispute.

22                              **IX. FORM OF NOTICE**

23       41. Unless provided otherwise in this Consent Decree, all written notification, reporting

24   or communication among the Parties required by this Consent Decree shall be addressed as

25   follows:

26

27

28

- 13 -                          CONSENT DECREE

1    For the United States:

2    Section Chief
     Environmental Enforcement Section
3    United States Department of Justice
     P.O. Box 7611
4    Washington, DC 20044-7611
     DJ Ref.# 90-5-2-1-09753
5
     and
6
     Allan Zabel
7    Senior Counsel
     Office of Regional Counsel (ORC-2)
8    United States Environmental Protection Agency - Region IX
     75 Hawthorne Street
9    San Francisco, CA 94015

10   and

11   Steve Frey
     Senior Engineer
12   Air Division (Air-5)
     United States Environmental Protection Agency - Region IX
13   75 Hawthorne Street
     San Francisco, CA 94015
14

15   For PG&E

16   Randal S. Livingston
     Vice President – Power Generation
17   Pacific Gas and Electric Company
     P.O. Box 770000, Mail Code N11E
18   San Francisco, CA 94177

19   Ronald A. Gawer
     Senior Plant Manager – Gateway Generating Station
20   Pacific Gas and Electric Company
     3225 Wilbur Avenue
21   Antioch, CA 94509

22   David R. Farabee
     Pillsbury Winthrop Shaw Pittman LLP
23   50 Fremont Street
     San Francisco, CA 94105-2228
24
     Matthew A. Fogelson
25   Pacific Gas and Electric Company
     P.O. Box 7442, B30A
26   San Francisco, CA 94120-7442

27   The United States, EPA or PG&E may change the address to which notices shall be sent by

28   notifying the Parties in writing at the above addresses.

- 14 -                                CONSENT DECREE

42. Unless the United States and EPA agree to a different form of submission, notification to or communications with the United States or EPA shall be deemed submitted on the date they are (1) received or (2) sent, if sent by overnight express mail.

## X. PUBLIC NOTICE REQUIREMENT

43. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. PG&E consents to the entry of this Consent Decree without further notice.

44. If, for any reason, the Court should decline to approve this Consent Decree in the form presented, then this agreement is voidable at the discretion of any Party, and the terms of this Consent Decree may not be used as evidence in any litigation between the Parties.

## XI. RESOLUTION OF PAST CIVIL CLAIMS

45. This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of this Consent Decree. The United States and EPA retain all authority and reserve all rights to take any and all actions authorized by law to protect human health and the environment.

46. Except as provided in Paragraph 45 above, the United States and EPA hereby reserve all statutory and regulatory powers, authorities, rights, and remedies, both legal and equitable, civil, criminal, or administrative, including those that may pertain to PG&E's failure to comply with any of the requirements of this Consent Decree.

## XII. EFFECTIVE DATE AND TERMINATION

47. This Consent Decree will take effect on the date it is entered by the Court.

48. This Consent Decree shall terminate when all of the following conditions have been met:

(a) PG&E has satisfactorily complied with the requirements set forth in Section IV (Injunctive Relief) for a period of not less than 12 consecutive calendar months; and

- 15 -                                  CONSENT DECREE

1        (b) The BAAQMD has issued a permit to operate for GGS containing the limits
2   set forth in Paragraph 7; and

3        (c) PG&E has completed the actions required by Section V (Environmental
4   Mitigation Project); and

5        (d) PG&E has paid the civil penalty as set forth in Section III (Civil Penalty);
6   stipulated penalties, if any, as specified in Section VI (Stipulated Penalties); and the United
7   States' enforcement expenses, if any, as specified in Section XVII (Payment of Enforcement
8   Expenses).

9        49. For purposes of Paragraph 48, PG&E shall be deemed to have satisfactorily complied
10  with the requirements set forth in Section IV (Injunctive Relief) if the United States has not
11  collected any stipulated penalties for violations of this Consent Decree occurring during the 12-
12  month period, and during the 12-month period there are no unresolved demands for stipulated
13  penalties for violations of this Consent Decree.

14       50. PG&E shall initiate termination of this Consent Decree by submitting a notification
15  to the United States that all conditions for termination pursuant to Paragraph 48 above have been
16  satisfied. If the United States agrees with PG&E's notification, then the Parties shall file a joint
17  motion or stipulation for termination of this Consent Decree. If the United States does not agree
18  that the Consent Decree may be terminated, PG&E may invoke Dispute Resolution under Section
19  VIII of this Consent Decree.

20                              **XIII. MODIFICATION**

21       51. The terms of this Consent Decree may be modified only by a subsequent written
22  agreement signed by the United States and PG&E. Where the modification constitutes a material
23  change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

24                        **XIV. RETENTION OF JURISDICTION**

25       52. Until the termination of this Consent Decree pursuant to Section XII (Effective Date
26  and Termination), this Court shall retain jurisdiction over this action and all disputes arising
27  hereunder for the purposes of implementing, interpreting, and enforcing the terms and conditions
28  of this Consent Decree.

                              - 16 -                    CONSENT DECREE

1

## XV. COSTS OF SUIT

2   53. Each Party shall bear its own costs and attorneys' fees incurred in this action through
3   the date upon which this Consent Decree is entered.

4

## XVI. PAYMENT OF ENFORCEMENT EXPENSES

5   54. Notwithstanding Section XV (Costs of Suit), PG&E shall pay the United States'
6   enforcement expenses, including, but not limited to, reasonable attorneys' fees and costs, when
7   the United States incurs such expenses to enforce the terms of this Consent Decree or to collect
8   any unpaid balance of the civil penalty specified in Section III (Civil Penalty) and any unpaid
9   balance of stipulated penalties to be paid in accordance with Section VI (Stipulated Penalties).
10  PG&E shall not be liable for such enforcement expenses if the Court denies the underlying relief
11  sought by the United States pursuant to this Section XVI.

12

## XVII. SERVICE

13  55. PG&E hereby agrees to accept service of process by mail with respect to the
14  Complaint and all matters arising under or relating to this Consent Decree and to waive the
15  formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any
16  applicable local rules of this Court, including, but not limited to, service of a summons. PG&E
17  shall identify, on the attached signature page, the name and address of an agent who is authorized
18  to accept service of process with respect to the Complaint and all matters arising under or
19  relating to this Consent Decree.

20

## XVIII. FINAL JUDGMENT

21  56. Upon approval and entry of this Consent Decree by the Court, this Consent Decree
22  shall constitute a final judgment of the Court as to the United States and PG&E. The Court finds
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

- 17 -                                    CONSENT DECREE

1     that there is no just reason for delay and therefore enters this judgment as a final judgment under

2     Fed. R. Civ. P. 54 and 58.

3

4

5

6

7

8                                      **ORDER**

9                                      IT IS SO ORDERED:

10

11     Dated:_____10/6/09_____

12                                        United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                         CONSENT DECREE

Signature page for *United States of America v. Pacific Gas and Electric Company* Consent Decree

FOR UNITED STATES DEPARTMENT OF JUSTICE:

Respectfully submitted,

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources
 Division
U.S. Department of Justice
Washington, D.C. 20530

W. BENJAMIN FISHEROW
Deputy Chief
BRADLEY R. O'BRIEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
 Division
U.S. Department of Justice

- 19 -                                        CONSENT DECREE

1  Signature page for *United States of America v. Pacific Gas and Electric Company* Consent
   Decree

2  FOR UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

3

4                              Respectfully submitted,

5

6

7                              LAURA YOSHII
                               Acting Regional Administrator, Region 9
                               United States Environmental Protection Agency

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              - 20 -                        CONSENT DECREE

1    Signature page for *United States of America v. Pacific Gas and Electric Company* Consent
     Decree

2    FOR PACIFIC GAS AND ELECTRIC COMPANY

3

4                          Respectfully submitted,

5

6                          _____
                           Randal S. Livingston
7                          Vice President – Power Generation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          - 21 -                    CONSENT DECREE