1  IGNACIA S. MORENO
   Assistant Attorney General
2  Environment and Natural Resources Division
   United States Department of Justice
3  Washington, D.C.  20530

4  W. BENJAMIN FISHEROW
   Deputy Chief
5  Environmental Enforcement Section
   BRADLEY R. O'BRIEN
6  Senior Attorney
   Environmental Enforcement Section
7  Environment and Natural Resources Division
   United States Department of Justice
8  601 D Street, N.W.
   Washington, DC 20004
9  Telephone: 202-514-2750
   Fax: 202-514-0097
10 DC Bar No.: 964734
   Email: Benjamin.fisherow@usdoj.gov
11        Brad.obrien@usdoj.gov

12

13 Attorneys for Plaintiff United States of America

14
                  UNITED STATES DISTRICT COURT
15                NORTHERN DISTRICT OF CALIFORNIA

16 UNITED STATES OF AMERICA,                )
                                            )
17 Plaintiff,                               )
                                            )
18                                          )        Civil Action No. 09-4503 SI
                  v.                        )
19                                          )        **SECOND AMENDED**
                                            )        **CONSENT DECREE**
20 PACIFIC GAS AND                          )
   ELECTRIC COMPANY                         )
21                                          )
   Defendant.                              )
22                                          )

23

24

25

26

27

28

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

1

## TABLE OF CONTENTS

2

3  I.      JURISDICTION AND VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4  II.     APPLICABILITY AND BINDING EFFECT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5  III.    CIVIL PENALTY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6  IV.     INJUNCTIVE RELIEF  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7  V.      ENVIRONMENTAL MITIGATION PROJECTS  . . . . . . . . . . . . . . . . . . . . . . . . 9

8  VI.     STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

9  VII.    FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10  VIII.   DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11  IX.     FORM OF NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

12  X.      PROHIBITION ON NETTING CREDITS OR OFFSETS  . . . . . . . . . . . . . . . . 17

13  XI.     RESOLUTION OF PAST CIVIL CLAIMS  . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

14  XII.    EFFECTIVE DATE AND TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15  XIII.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

16  XIV.    RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

17  XV.     COSTS OF SUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18  XVI.    PAYMENT OF ENFORCEMENT EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . 20

19  XVII.   SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20  XVIII.  FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

21

22

23

24

25

26

27

28

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

1      WHEREAS, Plaintiff United States of America, on behalf of the United States

2  Environmental Protection Agency ("EPA"), has filed a complaint ("Complaint") initiating this

3  action against Pacific Gas and Electric Company ("PG&E");

4      WHEREAS, the United States alleges that PG&E has constructed and commenced

5  operation of its 530 megawatt combined cycle, natural gas-fired combustion turbine power plant

6  located near Antioch, California, known as the Gateway Generating Station ("GGS"), in

7  violation of the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act

8  ("Act"), 42 U.S.C. § 7475, and the regulations promulgated thereunder as set forth at 40 C.F.R. §

9  52.21;

10      WHEREAS PG&E's predecessor-in-interest, Mirant Delta, LLC ("Mirant"), commenced

11  construction of GGS in late 2001 pursuant to an Authority to Construct ("ATC") issued by the

12  Bay Area Air Quality Management District ("BAAQMD") on July 24, 2001, which ATC also

13  constituted a PSD permit;

14      WHEREAS Mirant formally suspended construction of the facility in February, 2002;

15      WHEREAS on March 3, 2003, after making revisions to its federal PSD regulations, EPA

16  withdrew the delegation of PSD authority from BAAQMD;

17      Whereas BAAQMD believed EPA's withdrawal of delegation of PSD authority did not

18  affect its authority to extend existing PSD permits;

19      WHEREAS at the request of Mirant, BAAQMD extended the ATC twice, in 2003 and

20  2005, and believed, at those times, it was also extending the PSD permit;

21      WHEREAS PG&E acquired the unfinished GGS construction project from Mirant in

22  November, 2006, and resumed construction of the project on February 5, 2007;

23      WHEREAS in January, 2007, BAAQMD transferred the ATC to PG&E and believed it

24  was also transferring the still-effective PSD permit;

25      WHEREAS EPA alleges that BAAQMD was without authority to extend the PSD permit

26  after March 3, 2003, and that the PSD permit expired by operation of law 18 months after Mirant

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

- 1 -

1    ceased construction in February, 2002;

2         WHEREAS, PG&E denies the material allegations of the Complaint;

3         WHEREAS, this Second Amended Consent Decree does not constitute an admission by

4    PG&E of any facts or of any liability;

5         WHEREAS, the United States and PG&E (the "Parties") agree that settlement of the civil

6    claims as alleged in the Complaint is in the public interest and that entry of this Second Amended

7    Consent Decree without further litigation is the most appropriate way to resolve this action;

8         THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

9                              **I. JURISDICTION AND VENUE**

10        1.  This Court has jurisdiction over the subject matter of this action and over the Parties

11   pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, 1355,

12   and 1367.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1395, and 42

13   U.S.C. § 7413(b).  PG&E consents to and shall not challenge entry of this Second Amended

14   Consent Decree or this Court's jurisdiction to enter, enforce, modify, or terminate this Second

15   Amended Consent Decree.

16                        **II. APPLICABILITY AND BINDING EFFECT**

17        2.  Each signatory to this Second Amended Consent Decree certifies that he or she is fully

18   authorized to enter into the terms and conditions of this Second Amended Consent Decree and to

19   execute and legally bind the party for whom the signatory has signed.

20        3.  The provisions of this Second Amended Consent Decree shall apply to and be binding

21   upon the United States and PG&E, its subsidiaries and divisions, and its successors and assigns.

22   Any change in ownership or corporate status of PG&E, including, but not limited to, any transfer

23   of assets or real or personal property, shall in no way alter PG&E's responsibilities under this

24   Second Amended Consent Decree.

25                              **III. CIVIL PENALTY**

26        4.  Within thirty (30) days after the entry of this Second Amended Consent Decree, PG&E

27
     *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
28   Amended Consent Decree

                                      - 2 -

1   shall pay a civil penalty to the United States of twenty thousand dollars ($20,000.00).  Payment

2   shall be made by Electronic Funds Transfer ("EFT") to the United States Department of Justice

3   in accordance with the current electronic funds transfer procedures, referencing DOJ Case

4   Number 90-5-2-1-09753 and the civil action case name and case number.  Payment shall be in

5   accordance with written instructions which will be provided to PG&E by the Financial Litigation

6   Unit of the United States Attorney's Office for the Northern District of California following entry

7   of this Second Amended Consent Decree.  PG&E shall provide notice of payment, referencing

8   DOJ Case Number 90-5-2-1-09753 and the civil action case name and case number to EPA and

9   the Department of Justice at the addresses set forth in Section IX (Form of Notice).

10      5.  Upon entry of this Second Amended Consent Decree, the United States shall be deemed

11   a judgment creditor for purposes of collection of the penalties required by this Second Amended

12   Consent Decree and enforcement of this Second Amended Consent Decree.  In any collection

13   proceeding, the validity, amount, and appropriateness of the civil penalty specified in this Second

14   Amended Consent Decree shall not be subject to review.

15                              **IV.  INJUNCTIVE RELIEF**

16      6.  PG&E shall, within thirty (30) days after entry of this Second Amended Consent Decree,

17   submit to the California Energy Commission ("CEC") a Petition to Amend Conditions of

18   Certification in the matter of Gateway Generating Station (00-AFC-1) requesting an Order to

19   Amend the Energy Commission Decision in the matter of Gateway Generating Station (00-AFC-

20   1).  The amendments sought by PG&E shall:

21      (A) immediately lower GGS' current limit for oxides of nitrogen ("NOx") emissions from

22   the combined cycle units from 2.5 parts per million volume ("ppmv") to 2.0 ppmv on a dry basis

23   corrected to 15% oxygen and averaged over any one-hour period;

24      (B) lower GGS' rolling 12-month NOx emissions cap for the combined cycle units from

25   174.3 tons per year ("tpy") to 139.2 tpy beginning the first full month after the effective date of

26   this Second Amended Consent Decree;

27

28   *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
     Amended Consent Decree

                                      - 3 -

1    (C) lower GGS' rolling 12-month SO2 emissions cap for the combined cycle units from

2    48.5 tpy to 18.5 tpy;

3    (D) lower GGS' current limit for PM-10 emissions from the combined cycle units from

4    0.00588 lb/mmbtu when the heat recovery steam generator ("HRSG") duct burners are not in

5    operation and 0.00584 lb/mmbtu when the HRSG duct burners are in operation, to 0.004

6    lb/mmbtu regardless of operation of the HRSG duct burners; and

7    (E) lower GGS' current limit for PM-10 emissions from each of the combined cycle units

8    from 11.0 lb/hr when the HRSG duct burners are not in operation and 13.0 lb/hour when the

9    HRSG duct burners are in operation, to 7.50 lb/hr when the HRSG duct burners are not in

10    operation and 9.0 lb/hr when the HRSG duct burners are in operation.

11    7. PG&E shall, within thirty (30) days after entry of this Second Amended Consent Decree,

12    submit an application to the Bay Area Air Quality Management District ("BAAQMD")

13    requesting inclusion in the permit to operate and in the Title V Operating Permit for GGS of

14    permit conditions which contain all of the terms, requirements, and prohibitions contained in

15    Paragraph 6, Subparagraphs (A) through (E), above.  In addition, PG&E shall request that the

16    BAAQMD incorporate Condition AQ-13 from the CEC's May 2001 Project Approval for GGS

17    (then known as "Contra Costa Unit 8") into the permit to operate and into the Title V Operating

18    Permit for GGS.  Condition AQ-13 established a maximum sulfur content for the natural gas

19    combusted at GGS of 1.0 grain per 100 standard cubic feet.

20    8. Beginning  on the effective date of this Second Amended Consent Decree, and

21    notwithstanding any permitting action by the CEC and/or BAAQMD, all of the terms,

22    requirements, and prohibitions contained in Paragraph 6, Subparagraphs (A) through (E), above,

23    and Paragraph 11, below, shall apply to GGS.  Any violation of the terms, requirements, and

24    prohibitions contained in Paragraph 6, Subparagraphs (A) through (E), above, and Paragraph 11,

25    below, shall constitute a violation of this Second Amended Consent Decree. .

26    9. NOx emissions during Natural-Gas Combustion Turbine Start-up Mode shall not be

27
28    *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

included in calculating compliance with the one-hour emission limit of 2.0 ppmv set forth in Paragraph 6. CO emissions during Natural-Gas Combustion Turbine Start-up Mode shall not be included in calculating compliance with the applicable three-hour emission limit set forth in Paragraph 11. Natural-Gas Combustion Turbine Start-up Mode is the lesser of the first 256 minutes of continuous fuel flow to the natural gas-fired combustion turbine after fuel flow is initiated or the period of time from natural gas-fired combustion turbine fuel flow initiation until the natural gas-fired combustion turbine achieves two consecutive continuous emission monitor data points in compliance with the NOx and CO emission concentration limits set forth in Paragraphs 6 and 11.

10. NOx emissions during Natural-Gas Combustion Turbine Shutdown Mode shall not be included in calculating compliance with the one-hour emission limit of 2.0 ppmv set forth in Paragraph 6. CO emissions during Natural-Gas Combustion Turbine Shutdown Mode shall not be included in calculating compliance with the applicable three-hour emission limit set forth in Paragraph 11. Natural-Gas Combustion Turbine Shutdown Mode is the lesser of the 30 minute period immediately prior to the termination of fuel flow to the natural gas-fired combustion turbine or the period of time from noncompliance with the NOx and CO emission concentration limits set forth in Paragraphs 6 and 11 until termination of fuel flow to the natural gas-fired combustion turbine.

11. Except as provided by this Paragraph 11, beginning on the effective date of this Second Amended Consent Decree, PG&E shall not emit carbon monoxide ("CO") from GGS at an emission rate greater than 2.0 ppmv on a dry basis corrected to 15% oxygen and expressed as a three-hour average.

A. Pursuant to items (1), (2) and (3) of this Subparagraph A, below, and with Subparagraph B, below, GGS may emit CO at a rate greater than 2.0 ppmv, but in no event greater than 3.0 ppmv, during whichever schedule for installing new CO catalyst is in effect pursuant to items (1), (2) and (3). It is the intent of the Parties that the schedule for installing new

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

- 5 -

1    CO catalyst at GGS result in the expeditious ordering and installation of CO control catalyst in

2    order to minimize the risk that CO emissions will exceed 2.0 ppmv and to minimize the duration

3    of any such excess emissions.  For purposes of the schedule for installing new CO catalyst, the

4    scheduled annual outage ("Annual Outage") at GGS  will determine the date for installation.  The

5    Parties assume that each Annual Outage will commence on April 15 of each year, although the

6    parties acknowledge that the actual schedule for the Annual Outage will vary from year to year.

7    In the event no Annual Outage at GGS occurs in any year, for purposes of this Paragraph, the

8    Parties agree that such an outage will be deemed to have commenced on April 15 of that year.

9          (1).  Subject to the provisions of items (2) and (3), below, and using data based on actual

10    emissions of CO from GGS and other reliable information, PG&E shall propose a Projected CO

11    Emission Exceedance Date ("Projected Exceedance Date") by making a projection of the date

12    when, due to degradation of the CO catalyst and other factors, CO emissions from GGS are first

13    anticipated to exceed 2.0 ppmv.  PG&E shall submit its Projected Exceedance Date, and all

14    information on which it is based or that otherwise relates to the Projected Exceedance Date, to

15    EPA for review and approval on a calendar semiannual basis beginning December 15, 2012

16    ("Semiannual Submittal").  If PG&E's Projected Exceedance Date is 24 months or less after the

17    date the Semiannual Submittal containing that Projected Exceedance Date is due, PG&E shall

18    install new CO catalyst no later than the second Annual Outage after the due date of that

19    Semiannual Submittal.  If EPA disputes PG&E's Projected Exceedance Date in a Semiannual

20    Submittal, the Parties' disagreement over the Projected Exceedance Date shall be resolved in

21    accordance with Section VIII (Dispute Resolution).  In the event of a dispute arising under this

22    Paragraph 11, the provisions of Subparagraph C of this Paragraph shall apply.  Regardless of

23    when PG&E orders replacement CO catalyst, PG&E shall install the replacement CO catalyst no

24    later than during the first Annual Outage following PG&E's receipt of the replacement CO

25    catalyst.

26          (2) The schedule for installing new CO catalyst pursuant to item (1), above, shall be

27

28    *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

1   extended to the third Annual Outage after the due date of a Semiannual Submittal if all of the

2   following circumstances occur: 1) a Semiannual Submittal due on December 15 shows that

3   PG&E's Projected Exceedance Date is more than 24 months after the date that Semiannual

4   Submittal is due; 2) EPA fails to dispute that the Projected Exceedance Date is more than 24

5   months after the date the Semiannual Submittal containing that Projected Exceedance Date is

6   due; 3) the highest three-hour average CO emissions from GGS during the six-month period

7   prior to the Semiannual Submittal due on December 15 are 1.60 ppmv or lower; 4) by April 15 of

8   the calendar year following that December 15 Semiannual Submittal, the highest three-hour

9   average CO emissions from GGS are 1.80 ppmv or higher; and 5) PG&E has ordered new CO

10  catalyst within seven calendar days after the highest three-hour average CO emissions from GGS

11  are 1.80 ppmv or higher.

12      (3)  In no event shall PG&E order replacement catalyst later than seven calendar days

13  after the date on which actual CO emissions from GGS reach 1.80 ppmv or higher (except during

14  periods of startup and shutdown), expressed as a three-hour average.  Except as provided by item

15  (2) above, PG&E shall install the new CO catalyst no later than the second Annual Outage after

16  actual CO emissions from GGS reach 1.80 ppmv or higher (except during periods of startup and

17  shutdown).  Regardless of when PG&E orders replacement CO catalyst, PG&E shall install the

18  replacement CO catalyst no later than during the first Annual Outage following PG&E's receipt

19  of the replacement CO catalyst.

20      B.  If PG&E complies with the requirements of Subparagraph A of this Paragraph 11,

21  emissions of CO in excess of 2.0 ppmv, but not greater than 3.0 ppmv, will not subject PG&E to

22  civil liability for violation of this Consent Decree, including liability for stipulated penalties for

23  violation of the 2.0 ppmv CO emission limit, during the last 18 months before the

24  commencement of the Annual Outage during which new CO catalyst must be installed pursuant

25  to Subparagraph A.

26      C.  Pursuant to the Section VIII (Dispute Resolution) provisions of this Consent Decree, if

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
    Amended Consent Decree

1  the Court rules that the Projected Exceedance Date should have been earlier than the Projected

2  Exceedance Date proposed by PG&E in a Semiannual Submittal, both the installation schedule

3  established pursuant to Subparagraph A of this Paragraph 11 and the 18-month period described

4  in Subparagraph B of this Paragraph 11 shall be based upon the Projected Exceedance Date as

5  determined by the Court.

6     D. The provisions of this Paragraph 11 shall only apply to the first time PG&E installs

7  replacement catalyst at GGS.  Within 30 days after PG&E orders replacement catalyst pursuant

8  to this Paragraph 11, PG&E shall submit to the CEC a Petition to Amend Conditions of

9  Certification in the matter of Gateway Generating Station (00-AFC-1) requesting an Order to

10  Amend the CEC Decision in the matter of Gateway Generating Station (00-AFC-1).  The

11  amendments sought by PG&E shall lower GGS' limit for CO from the combined cycle units

12  from 6.0 ppmv to 2.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any three-

13  hour period.  The lowering of the CO emission rate for GGS shall be effective immediately after

14  PG&E installs replacement catalyst at GGS.  Within 30 days after PG&E orders replacement

15  catalyst pursuant to this Paragraph 11, PG&E shall submit an application to the BAAQMD

16  requesting inclusion in the permit to operate and in the Title V Operating Permit for GGS of

17  permit conditions which lower GGS' limit for CO from the combined cycle units from 6.0 ppmv

18  to 2.0 ppmv on a dry basis corrected to 15% oxygen and averaged over any three-hour period.

19  The lowering of the CO emission rate for GGS shall be effective immediately after PG&E

20  installs replacement catalyst at GGS.

21     12.  Beginning on the date of entry of this Second Amended Consent Decree,  PG&E shall

22  provide EPA, as provided in Section IX (Form of Notice), detailed excess emission reports for

23  NOx and CO emissions as described at 40 C.F.R. § 60.7(c). These reports shall be submitted

24  within 30 days after the end of each calendar quarter and shall cover that preceding calendar

25  quarter. The first report shall cover the partial calendar quarter from the date of entry of this

26  Second Amended Consent Decree  through December 31, 2010.

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

## V. ENVIRONMENTAL MITIGATION PROJECTS

13.  By January 1, 2010, PG&E shall submit applications to the CEC and/or BAAQMD, as necessary, for the installation of the General Electric OPFLEX Turndown and OPFLEX Startup NOx products as described in Paragraphs 14 and 15, below.

14.  By January 1, 2011, PG&E shall install and make fully operational at GGS' combined cycle units the General Electric OPFLEX Turndown product.  EPA is requiring use of this product in order to allow the combined cycle units to run at low capacity, thereby avoiding shut downs, startups, and the higher NOx emissions associated with startups.

15.  By January 1, 2011, PG&E shall install and make fully operational at GGS' combined cycle units the General Electric OPFLEX Startup product.  EPA is requiring use of this product in order to reduce the higher NOx emissions associated with startups.

## VI.  STIPULATED PENALTIES

16.  PG&E shall pay the following stipulated penalties for failure to comply with this Second Amended Consent Decree:

(a)  Failure to submit any of the applications as required pursuant to Paragraphs 6, 7, 11, or 13 above: $500 per day for each failure to apply.

(b)  Failure to submit any of the reports as required pursuant to Paragraph 12 above: $500 per day for each failure to submit.

(c)  Failure to pay the civil penalty required pursuant to Paragraph 4 above: $500 per day.

(d)  Failure to implement either of the projects required pursuant to Section V (Environmental Mitigation Projects) above: $500 per day for each failure to implement.

(e)  Failure to comply with the one-hour NOx emissions limitation of 2.0 ppmv in Paragraph 6 and incorporated into Paragraph 8: where the emission level constituting a violation is less than or equal to 3.0 ppmv, $500 per violation; where the emission level constituting a violation is greater than 3.0 ppmv and GGS has exceeded the 2.0 ppmv limit on 15 or fewer days

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

- 9 -

in the existing calendar year, $2,000 per violation; where the emission level constituting a violation is less than or equal to 3.0 ppmv and GGS has exceeded the 2.0 ppmv limit on more than 15 days in the existing calendar year, $5,000 per violation; and where the emission level constituting a violation is greater than 3.0 ppmv and GGS has exceeded the 2.0 ppmv limit on more than 15 days in the existing calendar year, $10,000 per violation.

(f) Failure to comply with the applicable three-hour CO emissions limitation in Paragraph 11: where GGS has exceeded the applicable three-hour CO emissions limitation on 15 or fewer days in the existing calendar year, $5,000 per violation; and where GGS has exceeded the applicable three-hour CO emissions limitation on more than 15 days in the existing calendar year, $10,000 per violation.

(g) Failure to comply with the rolling 12-month NOx emissions limitation in Paragraph 6 and incorporated into Paragraph 8: $20,000 per ton in excess of the applicable limit.

17. PG&E shall notify EPA in writing of any failure to meet Second Amended Consent Decree requirements for which stipulated penalties may be due as soon as it has knowledge of such failure.

18. All stipulated penalties shall begin to accrue on the day after the complete performance is due or the day that a violation occurs, and shall continue to accrue through the final day of the completion of the activity or the correction of the noncompliance. Nothing herein shall preclude the simultaneous accrual of separate stipulated penalties for separate violations of this Second Amended Consent Decree. Penalties shall accrue regardless of whether EPA has notified PG&E of a violation.

19. Stipulated penalties owed to the United States shall be paid by certified or cashier's check, payable to the "U.S. Department of Justice," and referencing this Second Amended Consent Decree by caption, civil action number, and DOJ Ref.# 90-5-2-1-09753. PG&E must deliver any such payments by certified mail with return receipt requested to:

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

- 10 -

United States Attorney
Northern District of California
Attention: Financial Litigation Unit
450 Golden Gate Ave, 10th Floor
San Francisco, California 94102

20. Concurrently with making any payment for stipulated penalties, PG&E must send notice of payment to EPA and DOJ directed to the addresses provided in Section IX (Form of Notice). The notice of payment shall also identify: (a) the specific provision of Section VI (Stipulated Penalties) related to such payment, and (b) a description of the violation(s) of this Second Amended Consent Decree for which the stipulated penalties or interest are being tendered.

21. Any stipulated penalty accruing pursuant to this Second Amended Consent Decree shall be payable upon demand and due not later than thirty (30) days from EPA's written demand. The United States may, in its unreviewable discretion, waive payment of any portion of stipulated penalties that may accrue under this Second Amended Consent Decree.

22. If PG&E fails to pay stipulated penalties owed pursuant to this Second Amended Consent Decree within thirty (30) days of receipt of a written demand, it shall pay interest on the late payment for each day of late payment after the initial thirty-day time period. The rate of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961.

## VII. FORCE MAJEURE

23. For purposes of this Second Amended Consent Decree, a "Force Majeure Event" shall mean an event that has been or will be caused by circumstances beyond the control of PG&E, its contractors, or any entity controlled by PG&E that delays compliance with any provision of this Second Amended Consent Decree or otherwise causes a violation of any provision of this Second Amended Consent Decree despite PG&E's best efforts to fulfill the obligation. "Best efforts to fulfill the obligation" include using the best efforts to anticipate any potential Force Majeure Event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay and any adverse environmental effect of the violation is minimized

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

- 11 -

1   to the greatest extent possible.

2       24.  Notice of Force Majeure Events.  If any event occurs or has occurred that may delay

3   compliance with or otherwise cause a violation of any obligation under this Second Amended

4   Consent Decree, as to which PG&E intends to assert a claim of Force Majeure, PG&E shall

5   notify the United States in writing as soon as practicable, but in no event later than twenty-one

6   (21) calendar days following the date PG&E first knew, or by the exercise of due diligence

7   should have known, that the event caused or may cause such delay or violation.  In this notice,

8   PG&E shall reference this Paragraph of this Second Amended Consent Decree and describe the

9   anticipated length of time that the delay or violation may persist, the cause or causes of the delay

10  or violation, all measures taken or to be taken by PG&E to prevent or minimize the delay and any

11  adverse environmental effect of the violation, the schedule by which PG&E proposes to

12  implement those measures, and PG&E's rationale for attributing a delay or violation to a Force

13  Majeure Event.  PG&E shall adopt all reasonable measures to avoid or minimize such delays or

14  violations.  PG&E shall be deemed to know of any circumstance which PG&E, its contractors, or

15  any entity controlled by PG&E knew or should have known.

16      25.  Failure to Give Notice.  If PG&E fails to comply with the notice requirements of this

17  Section, the United States may void PG&E's claim for Force Majeure as to the specific event for

18  which PG&E has failed to comply with such notice requirement.

19      26.  United States's Response.  The United States shall notify PG&E in writing regarding

20  PG&E's claim of Force Majeure within twenty (20) business days of receipt of the notice

21  provided under Paragraph 24.  If the United States agrees that a delay in performance has been or

22  will be caused by a Force Majeure Event, the United States and PG&E shall stipulate to an

23  extension of deadline(s) for performance of the affected compliance requirement(s) by a period

24  equal to the delay actually caused by the event.  In such circumstances, an appropriate

25  modification shall be made pursuant to Section XIII (Modification) of this Second Amended

26  Consent Decree.

27  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
28  Amended Consent Decree

- 12 -

27. <u>Disagreement</u>. If the United States does not accept PG&E's claim of Force Majeure, or if the United States and PG&E cannot agree on the length of the delay actually caused by the Force Majeure Event, the matter shall be resolved in accordance with Section VIII (Dispute Resolution) of this Second Amended Consent Decree.

28. <u>Burden of Proof</u>. In any dispute regarding Force Majeure, PG&E shall bear the burden of proving that any delay in performance or any other violation of any requirement of this Second Amended Consent Decree was caused by or will be caused by a Force Majeure Event. PG&E shall also bear the burden of proving that PG&E gave the notice required by this Section and the burden of proving the anticipated duration and extent of any delay(s) attributable to a Force Majeure Event. An extension of one compliance date based on a particular event may, but will not necessarily, result in an extension of a subsequent compliance date.

29. <u>Events Excluded</u>. Unanticipated or increased costs or expenses associated with the performance of PG&E's obligations under this Second Amended Consent Decree shall not constitute a Force Majeure Event.

30. <u>Potential Force Majeure Events</u>. The Parties agree that, depending upon the circumstances related to an event and PG&E's response to such circumstances, the kinds of events listed below are among those that could qualify as Force Majeure Events within the meaning of this Section: construction, labor, or equipment delays; malfunction of a combined cycle unit or emission control device; unanticipated natural gas supply or pollution control reagent delivery interruptions; acts of God; acts of war or terrorism; and orders by a government official, government agency, other regulatory authority, or a regional transmission organization, acting under and authorized by applicable law, that directs PG&E to supply electricity in response to a system-wide (state-wide or regional) emergency. Depending upon the circumstances and PG&E's response to such circumstances, failure of a permitting authority to issue a necessary permit in a timely fashion may constitute a Force Majeure Event where the failure of the permitting authority to act is beyond the control of PG&E and PG&E has taken all

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

1   steps available to it to obtain the necessary permit, including, but not limited to: submitting a

2   complete permit application; responding to requests for additional information by the permitting

3   authority in a timely fashion; and accepting lawful permit terms and conditions after

4   expeditiously exhausting any legal rights to appeal terms and conditions imposed by the

5   permitting authority.

6       31.  As part of the resolution of any matter submitted to this Court under Section VIII

7   (Dispute Resolution) regarding a claim of Force Majeure, the United States and PG&E by

8   agreement, or this Court by order, may in appropriate circumstances extend or modify the

9   schedule for completion of work under this Second Amended Consent Decree to account for the

10  delay in the work that occurred as a result of any delay agreed to by the United States or

11  approved by the Court.  PG&E shall be liable for stipulated penalties for its failure thereafter to

12  complete the work in accordance with the extended or modified schedule (provided that PG&E

13  shall not be precluded from making a further claim of Force Majeure with regard to meeting any

14  such extended or modified schedule).

15              **VIII. <u>DISPUTE RESOLUTION</u>**

16      32.  The dispute resolution procedure provided by this Section shall be available to resolve

17  all disputes arising under this Second Amended Consent Decree, provided that the Party

18  invoking such procedure has first made a good faith attempt to resolve the matter with the other

19  Party.

20      33.  The dispute resolution procedure required herein shall be invoked by one Party giving

21  written notice to the other Party advising of a dispute pursuant to this Section.  The notice shall

22  describe the nature of the dispute and shall state the noticing Party's position with regard to such

23  dispute.

24      34.  The Party receiving such a notice shall acknowledge receipt of the notice, and the

25  Parties shall expeditiously schedule a meeting to discuss the dispute informally not later than

26  fourteen (14) days following receipt of such notice.

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
    Amended Consent Decree

                              - 14 -

35. Disputes submitted to dispute resolution under this Section shall, in the first instance, be the subject of informal negotiations between the Parties. Such period of informal negotiations shall not extend beyond thirty (30) calendar days from the date of the first meeting between the Parties' representatives unless they agree in writing to shorten or extend this period.

36. If the Parties are unable to reach agreement during the informal negotiation period, the United States shall provide PG&E with a written summary of its position regarding the dispute. The written position provided by the United States shall be considered binding unless, within forty-five (45) calendar days thereafter, PG&E seeks judicial resolution of the dispute by filing a petition with this Court. If PG&E seeks judicial resolution, the United States's written summary shall be deemed its initial filing with this Court regarding the dispute. The United States may submit a response to the petition within forty-five (45) calendar days of filing.

37. The time periods set out in this Section may be shortened or lengthened upon motion to the Court of one of the Parties to the dispute, explaining the Party's basis for seeking such a scheduling modification.

38. This Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

39. As part of the resolution of any dispute under this Section, in appropriate circumstances the Parties may agree, or this Court may order, an extension or modification of the schedule for the completion of the activities required under this Second Amended Consent Decree to account for the delay that occurred as a result of dispute resolution. PG&E shall be liable for stipulated penalties for its failure thereafter to complete the work in accordance with the extended or modified schedule, provided that PG&E shall not be precluded from asserting that a Force Majeure Event has caused or may cause a delay in complying with the extended or modified schedule.

40. The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes. In their filings with the Court under Paragraph 36, the Parties shall state

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

1   their respective positions as to the applicable standard of law for resolving the particular dispute.

2   **IX. FORM OF NOTICE**

3   41.  Unless provided otherwise in this Second Amended Consent Decree, all written

4   notification, reporting or communication among the Parties required by this Second Amended

5   Consent Decree shall be addressed as follows:

6   For the United States:

7   Section Chief
    Environmental Enforcement Section
8   United States Department of Justice
    P.O. Box 7611
9   Washington, DC 20044-7611
    DJ Ref.# 90-5-2-1-09753
10

    and
11

    Allan Zabel
12  Senior Counsel
    Office of Regional Counsel (ORC-2)
13  United States Environmental Protection Agency - Region IX
    75 Hawthorne Street
14  San Francisco, CA 94015

15  and

16  Steve Frey
    Senior Engineer
17  Air Division (Air-5)
    United States Environmental Protection Agency - Region IX
18  75 Hawthorne Street
    San Francisco, CA 94015
19

    For PG&E
20

    Randal S. Livingston
21  Vice President – Power Generation
    Pacific Gas and Electric Company
22  P.O. Box 770000, Mail Code N11E
    San Francisco, CA  94177
23

    Ronald A. Gawer
24  Senior Plant Manager – Gateway Generating Station
    Pacific Gas and Electric Company
25  3225 Wilbur Avenue
    Antioch, CA  94509
26

27
    *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
28  Amended Consent Decree

1
   David R. Farabee
   Pillsbury Winthrop Shaw Pittman LLP
2
   50 Fremont Street
   San Francisco, CA  94105-2228
3

   Matthew A. Fogelson
4
   Pacific Gas and Electric Company
   P.O. Box 7442, B30A
5
   San Francisco, CA  94120-7442

6   The United States, EPA or PG&E may change the address to which notices shall be sent by

7   notifying the Parties in writing at the above addresses.

8       42.  Unless the United States and EPA agree to a different form of submission, notification

9   to or communications with the United States or EPA shall be deemed submitted on the date they

10   are (1) received or (2) sent, if sent by overnight express mail.

11             **X.  PROHIBITION ON NETTING CREDITS OR OFFSETS**

12       43.  Emission reductions at GGS that result from actions taken or to be taken by PG&E to

13   comply with the requirements of this Second Amended Consent Decree shall not be considered

14   as a creditable contemporaneous emission decrease for the purpose of obtaining a netting credit

15   or offset under the Clean Air Act's Nonattainment New Source Review and PSD programs

16       44.  The limitations on the generation and use of netting credits and offsets set forth in the

17   previous Paragraph do not apply to emission reductions achieved at GGS that are greater than

18   those required under this Second Amended Consent Decree.  For purposes of this Paragraph,

19   emission reductions at GGS are greater than those required under this Second Amended Consent

20   Decree if they result from GGS's compliance with federally-enforceable emission limits that are

21   more stringent than those limits imposed on GGS under this Second Amended Consent Decree

22   and under applicable provisions of the Clean Air Act or the applicable implementation plan for

23   the BAAQMD portion of California.

24       45.  Nothing in this Second Amended Consent Decree is intended to preclude the emission

25   reductions generated under this Second Amended Consent Decree from being considered as

26   creditable contemporaneous emission decreases for the purpose of attainment demonstrations

27

28   *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
   Amended Consent Decree

1  submitted pursuant to § 110 of the Act, 42 U.S.C. § 7410, or in determining impacts on National

2  Ambient Air Quality Standards, PSD increment, or air quality related values, including visibility,

3  in a Class I area.

## XI.  RESOLUTION OF PAST CIVIL CLAIMS

5  46.  This Second Amended Consent Decree resolves the civil claims of the United States for

6  the violations alleged in the Complaint filed in this action through the date of lodging of this

7  Second Amended Consent Decree.  The United States and EPA retain all authority and reserve all

8  rights to take any and all actions authorized by law to protect human health and the environment.

9  47.  Except as provided in Paragraph 46 above, the United States and EPA hereby reserve all

10  statutory and regulatory powers, authorities, rights, and remedies, both legal and equitable, civil,

11  criminal, or administrative, including those that may pertain to PG&E's failure to comply with

12  any of the requirements of this Second Amended Consent Decree.

## XII.  EFFECTIVE DATE AND TERMINATION

14  48.  This Second Amended Consent Decree will take effect on the date it is entered by the

15  Court.

16  49.  If, for any reason, the Court should decline to approve this Second Amended Consent

17  Decree in the form presented, then this agreement is voidable at the discretion of any Party, and

18  the terms of this Second Amended Consent Decree may not be used as evidence in any litigation

19  between the Parties.

20  50.  The provisions of Paragraphs 6 through 10 and 12 of Section IV (Injunctive Relief) of

21  this Second Amended Consent Decree shall terminate when all of the following conditions have

22  been met:

23  (a)  PG&E has satisfactorily complied with the requirements set forth in

24  Paragraphs 6 through 10 of Section IV (Injunctive Relief) for a period of not less than 12

25  consecutive calendar months; and

26  (b)  The BAAQMD has issued a permit to operate for GGS containing the limits set

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

- 18 -

1  forth in Paragraph 7; and

2          (c)  PG&E has completed the actions required by Section V (Environmental

3  Mitigation Project); and

4          (d)  PG&E has paid the civil penalty as set forth in Section III (Civil Penalty);

5  stipulated penalties, if any, as specified in Section VI (Stipulated Penalties); and the United

6  States' enforcement expenses, if any, as specified in Section XVI (Payment of Enforcement

7  Expenses).

8      51.  For purposes of Paragraph 50, PG&E shall be deemed to have satisfactorily complied

9  with the requirements set forth in Paragraphs 6 through 10 of Section IV (Injunctive Relief) if the

10  United States has not collected any stipulated penalties for violations of this Second Amended

11  Consent Decree occurring during the 12-month period, and during the 12-month period there are

12  no unresolved demands for stipulated penalties for violations of this Second Amended Consent

13  Decree.

14      52.  All remaining provisions of this Second Amended Consent Decree shall terminate after

15  PG&E satisfactorily complies with all requirements of Paragraph 11, complies with the 2.0 ppmv

16  emission limit for CO for not less than 12 consecutive calendar months after replacement of the

17  CO catalyst, and receives a final amended permit to operate and a final amended Title V permit

18  from the BAAQMD which contain the 2.0 ppmv emission limit for CO.  PG&E shall be deemed

19  to have satisfactorily complied with the remaining provisions of this Second Amended Consent

20  Decree if the BAAQMD issues a final amended permit to operate and a final amended Title V

21  permit which contain the 2.0 ppmv emission limit for CO, the United States has not collected any

22  stipulated penalties for violations of this Second Amended Consent Decree during the 12-month

23  period preceding PG&E's initiation of termination, and during the 12-month period preceding

24  such initiation of termination there are no unresolved demands for stipulated penalties for

25  violations of this Second Amended Consent Decree.

26      53.  PG&E shall initiate termination of any provision of this Second Amended Consent

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
   Amended Consent Decree

1  Decree by submitting a notification to the United States that all conditions for termination

2  pursuant to Paragraphs 50 through 52, as applicable, have been satisfied.  If the United States

3  agrees with PG&E's notification, then the Parties shall file a joint motion or stipulation for

4  termination.  If the United States does not agree, PG&E may invoke Dispute Resolution under

5  Section VIII (Dispute Resolution) of this Second Amended Consent Decree.

### XIII. MODIFICATION

7  54.  The terms of this Second Amended Consent Decree may be modified only by a

8  subsequent written agreement signed by the United States and PG&E. Where the modification

9  constitutes a material change to any term of this Second Amended Consent Decree, it shall be

10  effective only upon approval by the Court.

### XIV.  RETENTION OF JURISDICTION

12  55.  Until the termination of this Second Amended Consent Decree pursuant to Section XII

13  (Effective Date and Termination), this Court shall retain jurisdiction over this action and all

14  disputes arising hereunder for the purposes of implementing, interpreting, and enforcing the terms

15  and conditions of this Second Amended Consent Decree.

### XV.  COSTS OF SUIT

17  56.  Each Party shall bear its own costs and attorneys' fees incurred in this action through

18  the date upon which this Second Amended Consent Decree is entered.

### XVI. PAYMENT OF ENFORCEMENT EXPENSES

20  57.  Notwithstanding Section XV (Costs of Suit), PG&E shall pay the United States'

21  enforcement expenses, including, but not limited to, reasonable attorneys' fees and costs, when

22  the United States incurs such expenses to enforce the terms of this Second Amended Consent

23  Decree or to collect any unpaid balance of the civil penalty specified in Section III (Civil Penalty)

24  and any unpaid balance of stipulated penalties to be paid in accordance with Section VI

25  (Stipulated Penalties).  PG&E shall not be liable for such enforcement expenses if the Court

26  denies the underlying relief sought by the United States pursuant to this Section XVI (Payment of

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
Amended Consent Decree

- 20 -

1  Enforcement Expenses).

2  **XVII.  SERVICE**

3  58.  PG&E  has accepted service of process by mail with respect to the Complaint and all

4  matters arising under or relating to this Second Amended Consent Decree and  has waived the

5  formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any

6  applicable local rules of this Court, including, but not limited to, service of a summons.  PG&E

7  has identified, on the attached signature page, the name and address of an agent who is authorized

8  to accept service of process with respect to the Complaint and all matters arising under or relating

9  to this Second Amended Consent Decree.

10  **XVIII.  FINAL JUDGMENT**

11  59.  Upon approval and entry of this Second Amended Consent Decree by the Court, this

12  Second Amended Consent Decree shall constitute a final judgment of the Court as to the United

13  States and PG&E.  The Court finds that there is no just reason for delay and therefore enters this

14  judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

15  **ORDER**

16  IT IS SO ORDERED:

17

18

19  Dated:_____          _____

20  United States District Judge

21

22

23

24

25

26

27  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second

28  Amended Consent Decree

- 21 -

Signature page for *United States of America v. Pacific Gas and Electric Company* Second Amended Consent Decree

FOR UNITED STATES DEPARTMENT OF JUSTICE:

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
 Division
U.S. Department of Justice
Washington, D.C.  20530

W. BENJAMIN FISHEROW
Deputy Chief
BRADLEY R. O'BRIEN
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
 Division
U.S. Department of Justice

*United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second Amended Consent Decree

- 22 -

1  Signature page for *United States of America v. Pacific Gas and Electric Company* Second
   Amended Consent Decree

2

3  FOR UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

4

5                              Respectfully submitted,

6

7                              JARED BLUMENFELD
                               Regional Administrator, Region 9
8                              United States Environmental Protection Agency

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *United States v. Pacific Gas and Electric Company* - Civil Action No. 09-4503 SI - Second
    Amended Consent Decree

                                   - 23 -

Signature page for *United States of America v. Pacific Gas and Electric Company* Second Amended Consent Decree

FOR PACIFIC GAS AND ELECTRIC COMPANY

Respectfully submitted,

RANDAL S. LIVINGSTON
Vice President – Power Generation